UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANTONIO VALLIN BRIDGES,

                 Petitioner,

v.

RANDEE REWERTS,

                 Respondent.

_____/

Case No. 1:20-cv-1130

Honorable Hala Y. Jarbou

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.      Factual allegations

Petitioner Antonio Vallin Bridges is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility in Carson City, Michigan.  On December 1, 2015, Petitioner pleaded guilty to three counts of false pretenses – $1,000.00 or more but less than $20,000, Mich. Comp. Laws § 750.218(4)(a), and admitted he was a third habitual offender, Mich. Comp. Laws § 769.11.  *Bridges v. Barrett*, No. 1:16-cv-1269 (W.D. Mich.) (Plea Tr., ECF No. 21-2, PageID.123-128.)[1]  In exchange for Petitioner's plea, the prosecutor dismissed two counts charging Petitioner with using a computer to commit a crime, Mich. Comp. Laws § 752.797(3)(d).  The parties also agreed that Petitioner's minimum sentence would not exceed thirty months.

Petitioner summarized the factual basis for his plea in his brief to the Michigan Court of Appeals:

> Defendant pretended that he was the landlord of 5009 Devonshire Avenue.  He made up 3 false leases, and leased that property to 4 different tenants.  The property was in foreclosure and vacant.  He took money orders from these individuals and cashed them.  In the case of each fraudulent lease, the amount received by the defendant as the 1st month's rent and security deposit was greater than $1000.

*Bridges I* (Pet'r's Appl. for Leave to Appeal, ECF No. 21-4, PageID.165-166) (internal citations omitted.)  At the sentencing hearing held on December 16, 2015, the trial court sentenced Petitioner

---

[1] The petition presently before the Court is Petitioner's fifth petition challenging the sentences flowing from these convictions or the execution of those sentences.  Petitioner's first petition, *Bridges v. Barrett*, No. 1:16-cv-1269 (W.D. Mich.), (*Bridges I*) was dismissed for failure to exhaust state court remedies on March 17, 2017.  On the same day Petitioner signed the notice of appeal in *Bridges I*, he filed his second petition, *Bridges v. Harry*, No. 1:17-cv-287 (W.D. Mich.) (*Bridges II*).  *Bridges II,* was dismissed on April 14, 2017, for failure to exhaust state court remedies.  The third petition, *Bridges v. Harry*, No. 1:17-cv-612 (W.D. Mich.)—*Bridges III*—was dismissed on July 21, 2017.  Petitioner never followed through by pursuing his state court appellate remedies. *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx (search party name Bridges Antonio, visited November 25, 2020).  Petitioner was then released on parole.  Petitioner returned to prison after committing parole violations.  He filed his fourth habeas petition, *Bridges v. Mich. Parole Bd.*, No. 1:20-cv-483 (W.D. Mich.) (*Bridges IV*), relating to the parole board's consideration of inaccurate information to deny him parole, on May 26, 2020.  The Court dismissed that petition on June 16, 2020.

to concurrent sentences of 2 ½ to 10 years with 138 days of credit.  *Bridges I* (Sentencing Tr., ECF No. 21-3, PageID.150–151.)

Petitioner was paroled on January 30, 2018.[2]  While on parole, he was charged with resisting and obstructing a police officer and with fourth-degree criminal sexual conduct (CSC-IV).  He entered a plea to attempted resisting and obstructing a police officer.  The CSC-IV charge was dismissed by the trial court.  Petitioner was found guilty of a parole violation based on his plea to the attempted resisting and obstructing charge.

On August 31, 2020, the parole board denied Petitioner parole and required Petitioner to complete the Michigan Sex Offender Program (MSOP).  *Bridges VI* (ECF No. 1, PageID.2.)  Petitioner now contends he was denied due process because the parole board is requiring him to complete the MSOP when the CSC-IV charge was dismissed.  Therefore, Petitioner's constitutional challenge does not relate to his convictions or his sentences as imposed; rather, it relates to his eligibility for parole.  Moreover, it relates to a parole denial decision that is distinct from the parole denial decision that he challenged in *Bridges IV*.

In Michigan, generally, an inmate is eligible for parole when the inmate has served a period of time equal to the minimum sentence imposed by the court for the crime of which he was convicted, less good time and disciplinary credits.  Mich. Comp. Laws § 791.234.  Petitioner has already served his minimum sentence.

---

[2] Petitioner does not disclose the date of his parole in the petition.  He provides that date in his prisoner civil rights complaint which parallels and duplicates his claim that the parole board is violating his due process rights, *Bridges v. Mich. Parole Bd. et al*., No. 1:20-cv-1138 (W.D. Mich.) (*Bridges VI*).   According to the Michigan Department of Corrections (MDOC) Offender Tracking Information System (OTIS), Petitioner's "Earliest Release Date" was January 30, 2018; his maximum discharge date is July 30, 2025.  *See* https://mdocweb.state.mi.us/otis2/otis2profile. aspx?mdocNumber=437651 (visited November 25, 2020).  This Court takes judicial notice of the information provided by a search of the MDOC OTIS website with regard to Petitioner.  *See, i.e. Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249 *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 821-22 n. 3 (E.D. Mich. 2004).

It is noteworthy that Petitioner does not seek a new parole hearing; he seeks immediate release.  He argues that because he has a high probability of parole, once the improper imposition of the MSOP requirement is removed, "release is mandated."  (Pet., ECF No. 1, PageID.5.)

Although Petitioner correctly notes that his recent CSC-IV charge was dismissed, he is wrong to suggest that his criminal history does not include sex offenses.  On April 29, 2004, Petitioner entered a plea of *nolo contendere* in the Ingham County Circuit Court to a charge of assault with intent to commit a felony.[3]  *See Bridges v. Wolfenbarger*, No. 2:06-cv-10566 (E.D. Mich.) (Plea Tr., ECF No. 31-5.)[4]  In exchange for the plea, charges of home invasion and second-degree criminal sexual conduct (CSC-II) were dismissed.  Although the charge of CSC-II was dismissed, the factual basis for that charge remained relevant because it was the "felony" Petitioner intended to commit when he assaulted the victim.  The factual basis for the plea was taken from the preliminary examination of the victim and her housemates, Petitioner claimed he could not remember because he was too drunk.  The others, however, witnessed Petitioner with his hand down the pants of a woman passed out drunk on the living room couch as he kissed her.  *Bridges v. Wolfenbarger*, No. 2:06-cv-10566 (E.D. Mich.) (Prelim. Exam. Tr., ECF No. 31-3.)

---

[3] In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea.  Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*.  Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty.  Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

[4] The numbers assigned to the state court record on the docket of the United States District Court for the Eastern District of Michigan are off by one, i.e., the Plea Transcript dated April 29, 2004, shows at ECF No. 31-4 on the docket but it is stamped as docket number 31-5.

**II.**     **Due process right to parole**

In *Bridges IV*, Petitioner claimed that he was deprived of procedural due process because the decision to deny his parole was based on inaccurate information.  *Bridges IV* (Pet., ECF No. 1, PageID.2) ("Procedural Due Process requires that any government hearing . . . be considered with accurate information to render fair, accurate decision making and results for both sides.").  The present petition is just a variation on that theme.  Petitioner now focuses on a specific inaccuracy that taints the parole board's decision: the determination that he is a sex offender or that he should be required to complete the MSOP.

To establish a procedural due process violation, a party must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006).  Petitioner fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*,

the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge.  *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010).  Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Petitioner has served his maximum sentence, he has no reasonable expectation of liberty.  The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained."  *Greenholtz*, 442 U.S. at 11.  The Michigan Parole Board's failure or refusal to consider Petitioner for or grant him parole, therefore, implicates no federal right.  In the absence of a liberty interest, Petitioner cannot claim a violation of his procedural due process rights.  Petitioner's claim that his release on parole is "mandated" is plainly wrong.

### III.    Due process right to not being classified a "sex offender"

Petitioner also contends it is wrong that he is required to participate in sex-offender treatment when he is not in prison for a sex offense.  Petitioner's contention is based on a faulty premise.  He is not required to participate in sex-offender treatment.  He is doing so voluntarily in the hope he will improve his chances of parole.  Where parole is not a protected liberty interest, however, a condition or voluntary prerequisite of parole cannot enjoy due process protection either, unless that condition or prerequisite is independently worthy of due process protection.  *See Catanzaro v. Harry*, 848 F. Supp. 2d 780, 793-94 (W.D. Mich. 2012) ("Thus, the conditions of Plaintiff's parole[, including participation in a sex-offender treatment program,] implicated

Plaintiff's right to due process only if they;  (1) exceeded the sentence imposed on Plaintiff 'in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,' *Sandin*, 515 U.S. at 484 (citing *Vitek v. Jones*, 445 U.S. 480 (1980)); or (2) imposed 'significant and atypical hardship in relation to the ordinary incidents of prison life.' *Id*.").

In *Catanzaro*, this Court concluded that a prisoner convicted of a sex offense was not deprived of due process where he was compelled to participate in sex-offender treatment as a condition of parole.  The prisoner, Catanzaro, compared his plight to that of the plaintiff in *Vitek*:

> In *Vitek*, prison officials determined that the plaintiff, a state prisoner, was suffering from a mental illness or defect that could not be treated at the prison facility, so they transferred him to a mental health hospital for treatment under a state statute allowing the transfer of such prisoners.  *Vitek*, 445 U.S. at 484.  The plaintiff claimed that the prison officials violated his right to due process because their determination of illness was not accompanied by adequate notice or a hearing.  *Id*. at 485.  The Court agreed, finding that state law and practice gave the plaintiff an objective expectation that he would not be transferred unless a proper determination was made regarding his mental state.  *Id*. at 489-90.  Even apart from state law and practice, however, the plaintiff was entitled to due process because the consequences that he suffered were "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Id*. at 493.  The Court noted that "involuntary confinement to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual." *Id*. Confinement to a "mental hospital" for treatment involves more than merely a loss of freedom; it also has a stigmatizing effect on the treated individual.  *Id*. at 492. The Court concluded that, while "the restrictions on the prisoner's freedom of action at the [hospital] by themselves might not constitute the deprivation of a liberty interest . . . the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Id*. at 494.

*Catanzaro*, 848 F. Supp. 2d at 794.  This Court determined that "requiring a convicted sex offender to undergo rehabilitative treatment related to that offense is wholly different than requiring a prisoner to undergo involuntary health treatment." *Id*. at 795.  This Court recognized a distinction between imposing sex-offender classifications and requiring sex-offender treatment of those convicted of sex offenses and imposing that classification and requiring such treatment of those

7

who were not.  *Id*. at 796.  The Sixth Circuit Court of Appeals recently acknowledged the existence

of that line as well, but that court drew the line at a slightly different place.  In *Harper v. Arkesteyn*,

No. 19-1928, 2020 WL 4877518 (6th Cir. Apr. 28, 2020), the court reversed the district court's

dismissal of a claim like Petitioner's where the plaintiff had "neither been convicted of a sex crime

nor accused of any sexual wrongdoing while incarcerated."  *Harper*, 2020 WL 4877518, at *1.

Petitioner is not in the same position as the plaintiff in *Harper*; his position is more

like the plaintiff in *Catanzaro*.  Despite Petitioner's protests to the contrary, he has committed a

sexual offense: assault with the intent to commit a felony—CSC-II.  He enjoyed all of the

necessary procedural protections when he entered his plea.  Thus, to the extent Plaintiff is entitled

to due process protection before being classified a "sex offender," he alleges nothing to support

the inference that he did not receive the process he was due.

The MSOP is designed to offer treatment to "offenders with current sex offense

convictions and histories of sexual offending."  https://www.michigan.gov/corrections/0,4551,7-

119-68854_68856_74016---,00.html (visited November 25, 2020).  Even if Petitioner is not

presently serving a sentence for a current sex offense conviction, he has a history of sexual

offending.  The requirement that he participate in the MSOP suggests nothing more.

The Supreme Court has ruled that "States . . . have a vital interest in rehabilitating

convicted sex offenders" and "acceptance of responsibility for past offenses" is a "critical first

step" in a prison's rehabilitation program for such offenders. *McKune v. Lile*, 536 U.S. 24, 33

(2002).  Thus, Petitioner's further contention that he cannot be compelled to admit his offense as

a condition of parole is likewise without merit.

IV.    **Substantive due process**

Alternatively, Petitioner's arguments might be construed to implicate the

protections of substantive due process.  "Substantive due process prevents the government from

engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

This Court rejected a similar argument in *Catanzaro*:

> Plaintiff's required participation in the RSOP as a condition for his parole does not shock the conscience; it serves the state's legitimate interest in protecting the members of the community from future sex offenses. *See McKune*, 536 U.S. at 33, ("Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism").

*Catanzaro*, 848 F. Supp. 2d at 799. Requiring Petitioner to complete the MSOP under the circumstances present here, likewise does not shock the conscience. Accordingly, Petitioner has failed to demonstrate a substantive due process violation.

## V.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.   A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Id.*   "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.   Moreover, for the same reasons that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:  November 25, 2020                          /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   UNITED STATES DISTRICT JUDGE